UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHIRLEY ANN WILLRICH, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| VS. | )   Civil Action No: SA-06-CA-958-XR |
| | ) |
| CENTER FOR HEALTH | ) |
| CARE SERVICES, | ) |
| | ) |
|    Defendant. | ) |

# ORDER

On this day came on to be considered Defendant's motion to dismiss section 1981 claim (docket no. 10). For the reasons discussed below, the motion is GRANTED.

Willrich sues her employer Center for Health Care Services (CHCS) for race and national origin discrimination under Title VII. In addition, she brings suit under 42 U.S.C. § 1981.

Defendant seeks dismissal of the section 1981 claim arguing: (1) it is a governmental agency pursuant to Texas Health & Safety Code §§ 534.001(c)(1) - 534.0015 and immune from a section 1981 claim as an arm of the state; and (2) CHCS is not a "person" for section 1981 purposes and the proper vehicle for any claim is under section 1983. Plaintiff has not responded to this motion.

    **1.**     **CHCS has not demonstrated it is an arm of the state and is not entitled to Eleventh Amendment immunity**.

The Fifth Circuit "has concluded that § 1981 contains no express waiver of the state's Eleventh Amendment immunity, and thus § 1981 claims against a state or state agency are barred by the Eleventh Amendment." *Jackson v. Texas Forest Serv.*, 194 F.Supp.2d 566, 570 (E.D. Tex. 2001) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir.1981)). Neither section

1981 nor section 1983 abrogates Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Sessions*, 648 F.2d at 1069.[1]

In determining whether CHCS is an "arm of the state" for Eleventh Amendment immunity purposes, the Court must evaluate "its powers and characteristics as created by state law." *Clark v. Tarrant County, Tex.*, 798 F.2d 736, 744 (5th Cir. 1986). Applying the six-factor test set forth in *Clark*, the Court must first determine whether state statutes and case law view CHCS as an "arm of the state." Texas Health & Safety Code §§ 534.001(c)(1) states that a "community center is: (1) an agency of the state, a governmental unit, and a unit of local government, as defined and specified by Chapters 101 and 102, Civil Practice and Remedies Code."

Another factor to be considered is the source of the entity's funding, since an important goal of the Eleventh Amendment is the protection of state treasuries. *Clark*, 798 F.2d at 744. Although CHCS states that it receives state funding, it does not specify any amount or percentage of its budget that it receives from the state.

Another factor to be considered is the entity's degree of local autonomy. *Id.* CHCS argues that because the Texas Department of Mental Health and Mental Retardation possesses oversight responsibility, CHCS has little local autonomy. The Court, however, has reviewed the CHCS website and notes that although CHCS states it has a contract with the Texas Department of Mental Health and Mental Retardation, it boasts that it reports to an independent Board of Trustees, maintains a variety of local advisory committees, and employs its own Executive Management

---

[1] The Supreme Court has held that Title VII, which expressly authorizes suits against the states, abrogates Eleventh Amendment immunity because it was passed pursuant to section five of the Fourteenth Amendment. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 279 (1997) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445,456-57 (1976)).

Team.  *See* http://www.chcsbc.org.

Another significant factor in determining Eleventh Amendment immunity is whether the entity is concerned primarily with local, as opposed to statewide, problems.  *Clark*, 798 F.2d at 745.  CHCS serves only residents of Bexar County, Texas.  *See* http://www.chcsbc.org.

Other factors the Fifth Circuit has looked at are whether the entity has the authority to sue and be sued in its own name and whether it has the right to hold and use property.  *Clark*, 798 F.2d at 745.  CHCS asserts that it may only acquire property with the prior approval of the Texas Department of Mental Health and Mental Retardation.  CHCS does not address whether it may sue and be sued in its own name.

It should be noted that CHCS did not provide any evidentiary support for its arguments and merely pled general statements in its motion.  This Court concludes that no single factor conclusively shows that CHCS is an arm of the state, and viewing all the factors as a whole, CHCS is not an arm of the state within the meaning of the Eleventh Amendment.  The Fourth Court of Appeals in San Antonio has rejected the argument that community centers are entitled to Eleventh Amendment Immunity.  *See Brooks v. Center for Healthcare Services*, 981 S.W.2d 279, 287 (Tex. App.–San Antonio 1998, no pet.) ("Based on these statutes and the limited summary judgment evidence, we conclude that the Crisis Center, while subject to some state control, is more like a local government unit than an arm of the state . . . . We therefore conclude that the Crisis Center is not arm of the state for purposes of the Eleventh Amendment").  Furthermore, the Fifth Circuit has held that two local mental health agencies created under the predecessor to chapter 534 of the Health and Safety Code were not entitled to Eleventh Amendment immunity from § 1983 actions.  *Farias v. Bexar County Bd. of Trustees for Mental Health & Mental Retardation Servs.*, 925 F.2d 866, 874-75 (5th

Cir.1991); *Wheeler v. Mental Health & Mental Retardation Auth.*, 752 F.2d 1063, 1072-73 (5th Cir.1985).

### 2. Plaintiff has not alleged a proper section 1981 claim against CHCS.

The Fifth Circuit has held that vicarious liability against a public employer is not allowed under section 1981. *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir.1989) (citing *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir.1986), *reh'g en banc denied*, 837 F.2d 1244 (5th Cir. 1988) *aff'd in part and remanded in part*, 491 U.S. 701 (1989), *on remand*, 7 F.3d 1241 (5th Cir. 1993)). In the context of a damages action brought against governmental units, section 1983 provides the exclusive federal damages remedy for the violation of the rights guaranteed by section 1981 when the claim is pressed against a state actor in his or her official or individual capacity. *Jett,* 491 U.S. at 731; *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 463-64 (5th Cir. 2001); *Felton v. Polles*, 315 F.3d 470, 481 (5th Cir. 2002). In this case, the Court has determined that the Center is not an "arm of the state" that is entitled to Eleventh Amendment immunity, so the Center qualifies as a "person" for purposes of section 1983. However, in this case, Plaintiff has not asserted her section 1981 claim against CHCS through section 1983.

In order for a plaintiff to recover against a governmental unit under 1981 through section 1983, the plaintiff should sue his or her supervisor in that person's official capacity. *See Oden*, 246 F.3d at 464 ("[W]hen a plaintiff asserts a cause of action under § 1981 [through § 1983] for discrimination in the terms and conditions of a municipal employment contract, the proper defendant is the government employer in his official capacity"). Although a plaintiff may sue the governmental unit directly under 1981 through section 1983, it is still necessary for the plaintiff to identify his or her supervisor in the Complaint in order to determine whether the entity is subject to *Monell* liability.

*See Jett*, 491 U.S. at 731 (allowing suit against the Dallas Independent School District as an entity but requiring identification of the supervisor in order to determine whether that supervisor has final policymaking authority or acted pursuant to a custom or practice). In this case, Plaintiff sued CHCS as an entity, and she identified her supervisor in her First Amended Complaint, but she did not state that he had final policymaking authority or acted pursuant to a custom or practice in discriminating against her.

A plaintiff may not recover against a governmental unit pursuant to section 1981 unless he or she can establish that the supervisor acted "with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." *Jett*, 491 U.S. at 737 (internal citations omitted). Thus, the *Monell* principles that limit the liability of governmental units in section 1983 suits also limit their liability in section 1981 suits. *See id.* at 735 ("Thus to prevail on his claim for damages against the [governmental unit], petitioner must show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases"). A plaintiff must carry a heavy burden in order to establish *Monell* liability against governmental units in section 1981 cases. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1251 (5th Cir. 1993) (after remand from the Supreme Court, finding that the school district was not liable under *Monell* for the allegedly discriminatory actions of the principal and the superintendent).

Although difficult to establish, these individual and official capacity claims are valid because "racial harassment and other discrimination in an employment relations occurring after contract formation" is actionable under section 1981 through section 1983. *Felton*, 315 F.3d at 483. The elements of harassment and discrimination claims under section 1981 are identical to the elements of those same claims under Title VII. *Id.*

A plaintiff may not pursue an independent action under section 1981 against his or her supervisor in that person's individual capacity. *Oden*, 246 F.3d at 465 & n.5. A plaintiff can only sue his or her supervisor in that person's individual capacity under section 1981 through section 1983, and the supervisor is entitled to the defense of qualified immunity.[2] *Felton v. Polles*, 315 F.3d 470, 481 (5th Cir. 2002). In this case, Plaintiff did not assert an individual capacity claim against her supervisor under section 1981 through section 1983.

In this case, Plaintiff has sued CHCS as an entity under section 1981. *See* First Amended Complaint, ¶ 24 ("Defendant has intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race, Black, and National Origin in violation of 42 U.S.C. § 1981 . . . ."). In her First Amended Complaint, Plaintiff alleged that Moses Esquivel, Program Director, discriminated against her. However, Plaintiff does not allege that Esquivel had final policymaking authority or was acting pursuant to a custom or practice of CHCS. Plaintiff does not allege that she is bringing her section 1981 claim under section 1983. Most importantly, Plaintiff

---

[2]Although *Oden* could be read as completely foreclosing an individual capacity claim under section 1981, the Court is attempting to reconcile two Fifth Circuit cases by distinguishing between individual capacity claims pursued directly under section 1981 (*Oden*) and individual capacity claims pursued under section 1981 through section 1983 (*Felton*). *See Oden*, 246 F.3d at 462 ("We must determine whether Oden can assert an *independent cause of action under § 1981* against Oktibbeha County and the Sheriff in his official and individual capacities") (emphasis added).

never responded to Defendant's motion to dismiss the section 1981 claim. *See* Local Rule CV-7(d) ("If there is no response filed within the time period prescribed by this rule, the Court may grant the motion as unopposed"). Thus, Plaintiff's section 1981 claim is DISMISSED. The Court notes that the elements of Plaintiff's section 1981 claims are identical to her Title VII claims, and Title VII permits respondeat superior liability against CHCS while section 1981 does not. *See Smith v. Amedisys, Inc.,* 298 F.3d 434, 448 (5th Cir. 2002) ("While Title VII's definition of the term employer includes 'any agent' of an employer, Congress's purpose was merely to import respondeat superior liability into Title VII").

It is so ORDERED.

SIGNED this 3rd day of May, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE